UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA      )
                              )
          v.                  )   Docket No. 5:19-cr-00788-FB-3
                              )
QUANTADYN CORPORATION,        )   San Antonio, Texas
                              )   September 15, 2020
          Defendant.          )
_____)

TRANSCRIPT OF REARRAIGNMENT/PLEA AND SENTENCING HEARING
(BY VIDEO)
BEFORE THE HONORABLE FRED BIERY
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE GOVERNMENT:
William Franklin Lewis, Jr.
Mary Nelda Valadez
Mark Tindall
U.S. Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, TX 78216

Alan M. Buie
U.S. Attorney's Office
903 San Jacinto Boulevard, Suite 334
Austin, TX 78701

Jonathan Paul Porier
Air Force Civil Engineer Center
2261 Hughes Avenue, Suite 155
Lackland AFB, TX 78236-9853

FOR THE DEFENDANT:
Thomas A. Hanusik
Crowell & Moring, LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004-2595

Jay Dewald
Jackson Walker, LLP
112 East Pecan Street, Suite 2400
San Antonio, TX 78205

COURT REPORTER:
Chris Poage, CRR, RMR
United States Court Reporter
655 East Cesar E. Chavez Blvd., Suite G-65
San Antonio, TX  78206
Telephone:   (210) 244-5036
chris_poage@txwd.uscourts.gov

Proceedings reported by stenotype, transcript produced by
computer-aided transcription.

*(7:58 a.m.)*

THE COURT:  Good morning, ladies and gentlemen.  We're here first this morning on a matter in Cause Number 19-CR-788 -- of the year 2019, styled United States of America versus Quantadyn Corporation.

Announcements for the United States.

MR. LEWIS:  Good morning, Your Honor.  Bill Lewis on behalf of the United States.  With me is Alan Buie, Jay Porier, Mary Nelda Valadez and Mark Tindall.  We're all ready.

THE COURT:  All right.  And I think I'm pronouncing this correctly.  For Quantadyn Corporation, announce --

MR. DEWALD:  Good morning, Your Honor.  This is -- this is Jay Dewald from Jackson Walker here in San Antonio.  I'm local counsel.  And with me virtually is Tom Hanusik from Crowell Moring, who is lead counsel for Quantadyn Corporation.

THE COURT:  All right.  And I see Mr. Dunn there, and I recognize his name as the current CEO of Quantadyn.  Is that correct?

MR. DEWALD:  Yes, it is.

MR. DUNN:  Yes, Your Honor.

THE COURT:  Okay.  All right.  And Mr. Dewald or Mr. Hanusik, when we go through this plea colloquy, who will be speaking for the corporation as counsel?

MR. HANUSIK:  This is Mr. Hanusik.  And I will, Your Honor.

THE COURT:  Okay.  All right.  And, of course, we have Officer Beltran and Hernandez here by video.  And then I see someone else is connecting right now.  Okay.  All right.

And I believe, so that everyone knows if you don't know already, there are other counsel involved for other defendants who are listening in, since we don't have an open courtroom right now.

Officer Rodriguez from probation also just joined us.

All right.  So this is somewhat unusual, obviously.  So bear with me as we go through this.

Mr. Dunn, if you will raise your right hand, please.

*(The oath was administered)*

THE COURT:  All right.  Very well.

Now, I have thoroughly reviewed the proposed plea agreement and the factual basis and the proposal to go forward with sentencing today.

Mr. Lewis, is there any objection from the United States to going forward -- if the plea of guilty is entered, and going forward with the sentencing?

MR. LEWIS:  The government does not oppose, Your Honor.

THE COURT:  All right.  And, Mr. Hanusik, I'm sure the corporation does not.

MR. HANUSIK:  Correct, Your Honor.

THE COURT:  Okay.  Now, first of all, Mr. Dunn, I have

before me a document purported to be signed by you a week or so ago -- or yesterday, purporting to agree to have this matter done by video as opposed to in person, in court.  Is that correct?

MR. DUNN:  Yes, Your Honor.

THE COURT:  And, Mr. Lewis, the government agrees to have this by video as well?

MR. LEWIS:  Yes, Your Honor.

THE COURT:  All right.  Now, Mr. Dunn, do you understand that the corporation, pursuant to this plea agreement, first of all, is a binding plea agreement, which is somewhat unusual in any case because usually the punishment is decided at a later date and it's up to the discretion of the Court.  And, of course, the plea agreement in this case doesn't have to be accepted by the Court.  But at this point I see no reason why it would not be.

At any rate, do you understand, Mr. Dunn, that this is a binding plea agreement pursuant to Rule 11(c)(1)(C)?

MR. DUNN:  Yes, Your Honor.

THE COURT:  And we'll go through the details of that punishment and probation for the corporation and so forth.

Do you understand that the corporation is charged with a number of different counts?

MR. DUNN:  Yes, Your Honor.

THE COURT:  And in this plea agreement the corporation

would be pleading guilty to Count 2 of the indictment, which charges conspiracy to commit wire fraud.  Do you, on behalf of the corporation, understand that charge?

MR. DUNN:  Yes, Your Honor.

THE COURT:  And I don't know if you have a volume increase button on your end.  I can hear you sort of, but it's a little bit soft.

MR. DUNN:  I will try to speak up, Your Honor.

THE COURT:  Okay.  All right.  Now that's fine.  Okay. And, Mr. Lewis, can you hear Mr. Dunn?

MR. LEWIS:  I can, Your Honor.

THE COURT:  All right.  By the way, also among the documents, Mr. Dunn, I saw a resolution by the board of directors agreeing to this, also.  Is that correct?

MR. DUNN:  Yes, Your Honor.

THE COURT:  All right.  Now, for this type of charge in this particular case, pursuant to 18 USC 1343 and 1349, the punishments are probation of not less than one year or greater than five years, forfeiture of the property derived from the offense and all losses suffered by any victim as a result of the offense and any relevant conduct, jointly or severally, with other liable parties.  Excuse me.

There could be a fine of no greater than the greatest of $500,000 or twice the gross pecuniary loss that resulted from the offense or twice the gross pecuniary gain derived from the

offense.  There also is a special assessment for $400.

Do you understand, Mr. Dunn, on behalf of the corporation, what the punishment aspects of the case are generally?

MR. DUNN:  Yes, Your Honor.

THE COURT:  And specifically, have you gone over with your counsel the specifics of the sentencing agreement, which begins at the bottom half of Page 2 of the plea agreement, having to do with a restitution amount of $37,757,713.91, due and payable at sentencing, with no less than 500,000 to be paid on or before the date of sentencing, and the remainder to be paid as directed by the Court, a fine of $6,300,000 due and payable at sentencing, with payment to commence upon satisfaction of the restitution obligation, and forfeiture of the property described under the forfeiture heading.  And the Court can determine all other aspects of the punishment.

And, Mr. Lewis, if you can direct me to the -- there was a list I saw of various amounts that were -- here it is, on Page 6 -- that were seized from various bank accounts.

Now, Mr. Lewis, that money is to be credited within the 37 million, or not?

MR. LEWIS:  The agreement of the parties, Your Honor, is that the property will be forfeited to the government, and the claim with the Department of Justice money laundering section will be made to allow for those forfeited funds to be applied to restitution.  The government will not oppose that

request being made.  If the money laundering section of the Department of Justice agrees with having the forfeited funds applied to restitution, then it will be applied and will be used as a credit against the total amount of restitution owed by Quantadyn.

THE COURT:  All right.  And then let's go back to Page 2, the line after -- concerning the 37 million.  Has the $500,000 been paid, or is it available today, Mr. Hanusik?

MR. HANUSIK:  It is available today, Your Honor. We're awaiting instructions.  And I've asked Mr. Rodriguez and Ms. Herndon to supply as to where it should be paid.

THE COURT:  All right.  And then it says "and the remainder to be paid as directed by the Court."  Mr. Hanusik first.  Do you all have either a proposal or an agreement as to how that balance would be paid?

MR. HANUSIK:  Your Honor, our intention -- and I just want to be clear.  The company clearly does not have the ability to pay that now.  I think the ability-to-pay analysis is referenced in the plea agreement.  What we would need to do is win substantial further business to meet those obligations. The government's aware of that.  And the plea agreement, as I said, references it.

So we propose, as we agreed, to make the deposit today and then consult with the U.S. Attorney's office, with probation, come back to the Court in the near future with a proposed

schedule --

THE COURT:  Okay.

MR. HANUSIK:  -- once they're satisfied about that ability to pay and the current financial situation of the company.

THE COURT:  All right.  And, Mr. Lewis, is that acceptable to the United States?

MR. LEWIS:  It is, Your Honor.

THE COURT:  All right.  Now, Mr. Dunn, back to the facts of this case.  And I'm just going to read the summary at the -- at the beginning of 22 pages of factual basis, for those who are listening who may not be familiar with it.

But it reads:  Beginning in 2007 and continuing into 2018, as part of a conspiracy and scheme to fix government contracts to eliminate competition in contracting, to frustrate and defeat government contracting procedures and to defraud and steal money from the government, codefendant David Bolduc and his company, defendant Quantadyn Corporation, and others, paid $2,329,536 in bribes to codefendant Keith Alan Seguin, an Air Force civilian employee of the 502 Trainer Development Squadron at Randolph Air Force Base near San Antonio, Texas, in return for Seguin's influence in obtaining government contracts and subcontracts for Quantadyn, his facilitation of the contract fixing conspiracy and scheme described herein, and his allowing and colluding in the fraud against the United States.

During the Quantadyn/Seguin relationship Quantadyn grew from five or six employees to more than 50 employees.  And its revenues grew from less than four million dollars per year to more than $20 million per year.

Seguin used his influence as an Air Force employee to fix the award amounts and winners of federal contracts to corrupt the contracting processes and to defraud the Air Force, General Services Administration and companies competing for government contracts.

Bolduc, Quantadyn and Seguin disguised and concealed millions in crime proceeds and profits with financial transactions that made the proceeds of graft appear to be legitimate revenue.

And then there follows the remainder of 20 some odd pages of the details of what the government says -- or believes it could prove, if this matter were to go to trial, against Quantadyn.

Mr. Dunn, have you and your board of directors been thoroughly briefed and read through the factual basis that the Court is referring to?

MR. DUNN:  Yes, Your Honor.

THE COURT:  And on behalf of the corporation and the board, does Quantadyn agree that those facts are accurate as to its corporate responsibility?

MR. DUNN:  Yes, Your Honor.

THE COURT:  And, Mr. Bolduc, as I recall, was CEO at the time.  Is that correct?

MR. DUNN:  That is correct, Your Honor.

THE COURT:  All right.  Mr. Lewis, do you wish the Court to inquire any further on the factual basis aspect of a plea agreement and the plea colloquy?

MR. LEWIS:  No, Your Honor.

THE COURT:  All right.  Now, Mr. Dunn, even though you have told the Court that on behalf of the corporation these facts happened, that does not make the corporation guilty unless, in fact, we conclude the plea of guilty.  But, of course, the corporation has constitutional rights to change its mind through you as its corporate representative.  And if that were to happen, then the Court would move forward with a trial before a jury of twelve people.

On the other hand, if in fact the corporation wishes to proceed with the plea agreement, then of course virtually all of those constitutional rights are being waived in order to get the benefit of the dismissal of other charges and the agreement as to what the punishment will be and so forth.

Those rights include, in addition to the right to a jury trial, the right to require the government to prove this and any other charges against the corporation beyond a reasonable doubt.

To do that, the government would have to bring in the

people who pursued the investigation, who analyzed the facts and the background, computed what the damages and restitution is.  Those witnesses against the corporation would be cross-examined by counsel for the corporation.  You, on behalf of the corporation, and others from the corporation could testify if that were chosen to do so, but there would also be a Fifth Amendment right not to testify, and the government would always have the burden of proof.  If the jury found the corporation guilty by unanimous verdict, the corporation would have appellate rights by direct and by habeas corpus appeal.

On behalf of the corporation, do you and the board understand those constitutional rights?

MR. DUNN:  Yes, Your Honor.

THE COURT:  And has anyone forced you, in your corporate capacity, or the board to pay any money, to threaten in any way, to force in any way to make the corporation give up its constitutional rights or to plead guilty or to sign the plea agreement?

MR. DUNN:  No, Your Honor.

THE COURT:  And, Mr. Lewis, usually at this point with an individual defendant the Court would ask, did the defendant know at the time that what was being done was a violation of the law, in order to get the scienter and the legal competency. How would you propose that be done at the corporate level, or does it need to be done?

MR. LEWIS:  Your Honor, I think the inquiry would be whether Mr. Dunn, as the corporate representative, can state that the corporation that was being led at the time by David Bolduc as the CEO was -- that the corporation was aware of the conduct that was ongoing, that was being engaged in by David Bolduc and others.

THE COURT:  Okay.  By inference, obviously, Mr. Bolduc is not before the Court to so testify at this time.  But at any rate, Mr. Dunn, in hindsight and based on the corporation's internal investigation, which I assume -- by the way, the corporation then eventually began to look at this matter as well.  Is that right?

MR. DUNN:  Yes, we did, Your Honor.

THE COURT:  So are you satisfied that people within the corporation, including Mr. Bolduc as its CEO, knew at the time that this was an illegal scheme to defraud the government?

MR. DUNN:  As far as I know, Your Honor, it was only one person.  It was Mr. Bolduc.

THE COURT:  Okay.  All right.  And also, on behalf of the corporation, has Quantadyn had enough time to listen to the advice and counsel of Mr. Dewald and Mr. Hanusik and others perhaps and come to the corporation's own independent conclusion and decision as to whether to go forward with a plea of guilty or to exercise its right to have a trial?

MR. DUNN:  I'm sorry.  Could you --

THE COURT: Have you all on the corporate level had enough time to listen to your lawyers and make an independent decision, not what on -- not based on the lawyers saying, You have to do this, but the lawyers laying out options, and then the corporate board and you making an independent decision, We want to do the plea agreement or not?

MR. DUNN: Yes, Your Honor.

THE COURT: Okay. And, Mr. Hanusik, are you satisfied, again on the legal competency issue, that the people involved in this decision are legally competent to make these decisions on behalf of the corporation?

MR. HANUSIK: I am, Your Honor.

THE COURT: All right. And have you and co-counsel had enough time to investigate the allegations and the alleged -- the facts against the corporation and analyze those facts and give the corporation and its board and leadership your professional advice and counsel of the strength or weakness of the government's case and what the corporate defendant's rights and choices are?

MR. HANUSIK: We have, Your Honor.

THE COURT: All right. At this time the Court finds Quantadyn Corporation, through its CEO representative, Mr. Dunn, legally competent to go forward. It has received effective advice and counsel from all of its counsel, including Mr. Hanusik and Mr. Dewald. And I believe Ms. Giese was

involved also at some point.  I saw her name on the docket.

At any rate, the Court finds that there is a factual basis to support a plea of guilty if one is entered; that there is an arm's length negotiated plea agreement containing a written and now orally-confirmed waiver of constitutional rights.  The Court finds that the corporation understands the charge against it, the pluses and minuses and costs and benefits of the plea agreement.  The Court finds that there is a binding 11(c)(1)(C) plea agreement subject to approval of the Court, and that the corporation understands the punishment possibilities and what the proposed punishment is under the binding plea agreement.

Having made those findings, Mr. Lewis, do you wish the Court to admonish further?

MR. LEWIS:  No, Your Honor.

THE COURT:  Mr. Hanusik?

MR. HANUSIK:  No, Your Honor.

THE COURT:  All right.  Mr. Dunn, as chief executive officer of the Quantadyn Corporation, in your representative capacity, to the federal felony charge against Quantadyn, which alleges in Count 2 of an indictment in Cause Number 19-CR-788 that Quantadyn Corporation committed the federal felony of conspiracy to commit wire fraud, in violation of 18 USC 1343 and 1349, on behalf of Quantadyn Corporation do you plead guilty or not guilty?

MR. DUNN:  Guilty, Your Honor.

THE COURT:  I accept the plea of guilty by Mr. Dunn in his corporate capacity and find Quantadyn Corporation guilty of Count 2 of the indictment and, without objection, will proceed to the sentencing.

Other than what's set forth in the plea agreement, Mr. Lewis, and what we've discussed here on the record and subject to some other terms of probation -- I'll go over that. But as far as the financial aspects and what has been discussed and what Mr. Hanusik has proposed in terms of getting with United States probation and coming up with a plan for the remainder of the payments and so forth, does the government have anything else it wishes to present or have the Court address?

MR. LEWIS:  At this time, Your Honor, yes, the government does have additional matters.  Procedurally, the Court has just concluded the plea hearing on behalf of Quantadyn Corporation.  In anticipation of that, the government filed its motion for preliminary order of forfeiture for those items that are listed in the plea agreement on Page 6, which the Court referred to earlier.

The government has also filed its motion for entry of a money judgment in the amount of 22,000, 834,000 -- I'm sorry -- $22,834,526.31, which is also subject to the terms of the plea agreement.  And the government asks that the Court consider those and grant those motions at this time.

THE COURT:  Mr. Hanusik and Mr. Dunn were hoping you would not realize that you said 22,000.

All right.  Mr. Hanusik, on behalf of the corporation, are there any objections to those forfeiture matters and what Mr. Lewis has just presented?

MR. HANUSIK:  No, there are not, Your Honor.

THE COURT:  And, Mr. Dunn, on behalf of the corporation, any objections?

MR. DUNN:  No, Your Honor.

THE COURT:  All right.  Mr. Lewis, do you have anything further before the Court addresses what is on Page 10 of the plea agreement?

MR. LEWIS:  Your Honor, the government does not have any additional matters.

With respect to Page 10, the government does bring forth to the Court's attention that one of the terms of the plea agreement is that the defendant, Quantadyn, will retain an independent compliance monitor during the term of probation. It is the government's understanding that the corporation is presently in the process of hiring that monitor.  And that monitor's duties and responsibilities will be those as set forth in the plea agreement, and the monitor will work closely with probation during the term of probation to ensure compliance with all probation terms and conditions.

THE COURT:  All right.  And, Mr. Hanusik, is that the

defendant's understanding as well?

MR. HANUSIK:  That is correct, Your Honor.

THE COURT:  All right.  Officer Rodriguez, are you going to be the one from this point forward for U.S. Probation in terms of supervising this monitoring process and so forth?

PROBATION OFFICER:  Yes, Your Honor.  I am looking forward to getting the information regarding who they select. I'm not sure how long they may need.  But the sooner, the better.  I don't know if you want to weigh in on a deadline or something like that.

THE COURT:  Okay.  Well, unless it drags on too long, I'll leave that up to Quantadyn to move forward reasonably soon.

And, Officer Rodriguez, were there any other -- other than what's set forth in the plea agreement, any other details that probation needs or wants to add as any conditions?

PROBATION OFFICER:  Not at this time, Your Honor.  It seems the agreement has things in place so that we can monitor payment.  I am eager, as a supervision officer, to see if they can -- they can continue their business and start meeting these agreements.

THE COURT:  All right.  And speaking of moving on with the business aspects of the company, Ms. Herndon will get the judgment done as soon as possible.  As far as the Court is -- I'm obviously not going to bind the Air Force or any other

government agencies. But as far as the Court is concerned -- first of all, let me go back.

Mr. Lewis, anything else before the Court pronounces the judgment and sentence and closes the case?

MR. LEWIS: Nothing further from the government, Your Honor.

THE COURT: All right. Mr. Hanusik?

MR. HANUSIK: I think we just need to have Mr. Lewis dismiss the other counts. But other than that --

THE COURT: All right.

MR. HANUSIK: -- whenever you're ready to have that done is fine with us.

THE COURT: Okay. Mr. Lewis, the government moves to dismiss?

MR. LEWIS: Yes, Your Honor. Pursuant to the terms of the plea agreement, the government moves at this time to dismiss Counts 1 and 3 of the indictment.

THE COURT: All right. That's granted.

So Ms. Herndon will get that done hopefully today or tomorrow.

But anyway, going back to the ongoing business aspect of it, Mr. Lewis, if you could convey to any other government agencies that Quantadyn is seeking to do business with, the Court at this point considers this complete, and the Court has no objection to Quantadyn submitting bids and so forth to try

to overcome this unfortunate circumstance.

Now, Mr. Dunn, of course, you know that's not binding on the Air Force or any other government agency, but it might help get things back on track business-wise.

All right.  Mr. Lewis, anything else officially on this case for the United States?

MR. LEWIS:  Not at this time, Your Honor.

THE COURT:  All right.  Mr. Dewald, local counsel for Quantadyn, anything further?

MR. DEWALD:  I do not believe so, Your Honor.

THE COURT:  All right.  Mr. Dunn, on behalf of the corporation, do you have any questions?

MR. DUNN:  No, Your Honor.

THE COURT:  All right.  And, Mr. Hanusik, officially on the case aspect do you have anything further?

MR. HANUSIK:  No, Your Honor.  Thank you very much.

THE COURT:  All right.  On a non-case aspect, having nothing to do with it, I think you are in Dallas.  Is that correct?

*(Discussion off the record)*

THE COURT:  All right.  Very well.  That concludes the matter for the Court.  And we'll move on to the next case.

Thank you, Counsel.

Thank you, Mr. Dunn.  Good luck to you and the corporation.

MR. LEWIS:  Your Honor.

THE COURT:  Yes.

MR. LEWIS:  Is the Court going to pronounce the sentence at this time?

THE COURT:  Yes.  Judgment is pronounced, number one, and the sentence pronounced, that the plea agreement is approved, and all details of the punishment set forth in the plea agreement are approved and will be incorporated into the sentence.

MR. LEWIS:  And, also, the matters subject to forfeiture as contained in the plea agreement will --

THE COURT:  Yes.

MR. LEWIS:  -- as well?

THE COURT:  Correct.  The forfeiture matters are approved as well.

MR. LEWIS:  Thank you, Your Honor.

THE COURT:  All right.  Very well.  Record is closed at this time.

Thank you, Counsel.

MR. HANUSIK:  Thank you, Your Honor.

* * *

*(8:31 a.m.)*

-oOo-

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


Date:  9/15/2020          /s/ Chris Poage
                          United States Court Reporter
                          655 East Cesar E. Chavez Blvd., Rm. G-65
                          San Antonio, TX  78206
                          Telephone:  (210) 244-5036